IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:11-CR-00373-FL

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | ORDER |
| GARY KEVIN COATS, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This matter is before the court on the government's request for restitution in an amount in excess of $40,000.00, for fees and expenses awarded in judgment of the bankruptcy court to a bankruptcy trustee, and loss of income associated with the trustee's testimony at defendant's sentencing hearing at New Bern. For reasons stated, the request for restitution is allowed in the amount of $3,000.00.

**BACKGROUND**

On February 10, 2009, defendant filed for Chapter 7 relief under Title 11 of the United States Code, in the United States Bankruptcy Court for the Eastern District of North Carolina. A trustee duly was appointed. During pendency of the bankruptcy proceeding, defendant, a self-employed real estate agent, sought to advance sale of property he owned, being a residential condominium unit, in fraudulent dealings with the trustee involving a scheme personally to maintain around $17,400.00 in commission from the sale, in avoidance of his creditors.

Defendant impersonated in his dealings with the trustee a friend, and represented this friend's

employment as a licensed realtor on behalf of the proposed buyers. Posing as defendant's friend, defendant also represented association with a real estate agency. The individual agent actually retained by the purchasers was an owner of that agency. It appears the purchasers were sympathetic to the defendant, and unwittingly furthered his scheme for the brief period during which the defendant engaged directly the trustee. As his scheme unwound, defendant also assumed the identity of a lawyer to discourage recourse by the purchasers' agent.

In June 2009, as described in the PSR, the trustee discovered a contractor's lien on the real property. The trustee sought to negotiate a reduction in commission or an increased purchase price upon learning about the lien. Defendant persisted in his charade in negotiations with the trustee. However, the trustee was informed by the purchasers' attorney of side agreement they had entered into with defendant, to promote defendant's receipt personally of the commission sum. Sale of the condominium successfully was concluded June 12, 2009, about six weeks after defendant first contacted the trustee, as set forth in the PSR. No commission was paid to defendant.

Thereafter, the trustee objected to the discharge of defendant. A lengthy period of litigation in the bankruptcy court ensued. Defendant admitted his deceit in deposition occurring in March 2010. On July 7, 2010, the bankruptcy court denied defendant's discharge and assessed costs of the action and punitive damages against defendant. The bankruptcy court awarded the trustee $39,088.92 in damages for his fees and costs, as well as $10,000.00 in punitive damages.

Thus far, it appears that the sum of $4,500.00 has been collected under the terms of a consent order entered in defendant's underlying bankruptcy proceeding. Defendant's claim of exemption

2

under N.C. Gen. Stat. § 1C-1601(a)(2) for money from the sale of his property was disallowed. This money was applied to the judgment.[1]

In memorandum opinion issued July 7, 2010, the bankruptcy court commented upon the trustee's request for compensation "at a higher 'special' rate," and agreed under the circumstances presented that a more specialized effort was required of his office. The trustee's presentation to the bankruptcy court included a statement of services largely related to successful maintenance of his objection to discharge, for which he sought compensation for 13.20 hours of work at $415.00 an hour, and 26.80 hours of work at the rate of $395.00. Work of an associate also was billed out for 56.40 hours at $265.00 an hour and for 1.50 hours at $240.00. Request for payment for services of two paralegals was included. One was billed out for 18.90 hours at $175.00 an hour and 3.60 hours at $165.00 an hour, and another paralegal for .70 hours at the rate of $155.00 an hour.

The bankruptcy court adopted the entirety of the request for greater than usual compensation in the case. The bankruptcy court awarded all amounts requested for services performed in addition to punitive damages. The criminal case before this court followed. No order of restitution was recommended by the probation officer.

Defendant was charged in information with bankruptcy fraud beginning March 2009, when the germ of the scheme was planted, with conduct concluding in June 2009, when the property was sold. Defendant pleaded guilty pursuant to a written plea agreement, on February 14, 2012, to one count of bankruptcy fraud, as charged in information, in violation of 18 U.S.C. § 157(3). He was

---

[1] The government would seek in this instance to apply that amount to the punitive damages component of the award for which it does not seek here to recover. No authority was offered for an accounting first of this partial recovery to punitive damages and not to the stated actual damages; however, the court need not reach this priority issue given its ruling.

3

sentenced by this court on November 5, 2012, to imprisonment for a year and a day, three years of supervised release, and ordered to pay a special assessment of $100.00. At sentencing hearing, the court heard argument from the government and defendant regarding the issue of restitution. It took this aspect of the case under advisement, and directed the parties to submit briefs in furtherance of their respective positions, which now have been received and reviewed.[2]

Except as stated, the findings of the PSR were deemed credible and relied on by this court at sentencing November 5, 2012, without objection. Defendant, with no known criminal history, was held responsible for a loss of $17,400.00, the amount of the sought-after commission. Many civil money judgments appear on his record. With reference to his financial condition, the PSR inadvertently omitted the money judgment against defendant in the bankruptcy court. A negative net worth of $91,815.25 was presented, enhanced by the judgment of the bankruptcy court.

Monthly income of $1,200.00 was projected in the PSR based on current employment. While a modest positive monthly cash flow was suggested, the recitation of necessary monthly living expenses was devoid of expense items pertaining to food and shelter based on defendant's current living arrangements, where a parent was providing for him.

As noted, the probation officer concluded that there were no actual losses associated with the offense and that restitution is not an issue in this case. No money loss was shown to have been suffered by defendant's friend, whose identity he assumed, the real estate agency that defendant falsely represented his friend worked for, the individual agent actually retained by the purchasers

---

[2] Defendant makes motion to seal his brief where several references appear to the Pre-Sentence Report ("PSR") filed under seal (DE # 42). Under the circumstances presented, where counsel's references to the PSR are limited in nature, the court denies the motion to seal. The court's references herein to matters in the PSR also are largely to matters ones of public record.

4

who was an owner of that agency, or the lawyer whose identity defendant assumed in order to discourage recourse by the purchasers' agent through fraudulent representations. No regard was given to any loss sustained by the trustee.

The fraud related to the count of conviction quickly was unraveled by the trustee. After the trustee's shock of learning he had been negotiating the sale of a significant asset of the estate with the debtor, and not through a qualified realtor acting on behalf of the purchasers, the sale went through for the acceptable price, without defendant receiving any commission.

Four days prior to sentencing in this case, the government notified defendant and the probation officer of its intent to seek restitution on behalf of the trustee in the amount of $39,088.82, plus time in attendance at hearing.[3] At hearing the court received testimony of the trustee, and exhibits pertaining to the bankruptcy case. Also having considered the arguments of the parties, for reasons discussed below, the request for restitution is allowed in part.

## COURT'S DISCUSSION

The government contends restitution, largely tied to the trustee's services in successfully maintaining objection to discharge in bankruptcy after June 2009, is appropriate. The issue presented is a novel one in this circuit, it appears, concerning whether a trustee may be considered a victim for purposes of restitution.

A. Standard of Review

Disputes regarding restitution "shall be resolved by the court by the preponderance of the evidence." 18 U.S.C. § 3664(e). The government has the burden of showing a person is a victim

---

[3] Defendant's complaint about prejudice accruing from the failure to object timely to the PSR on the part of the government, where no restitution was recommended, was mitigated by the court's determination to delay decision on the issue of restitution, also to permit further briefing by the parties.

5

for purposes of restitution. Id. Restitution is a criminal penalty and part of a sentence, not a civil matter. United States v. Cohen, 459 F.3d 490, 496 (4th Cir. 2006).

B.  Analysis

The government argues that restitution is required under the Mandatory Victim Restitution Act, 18 U.S.C. § 3663A (the "MVRA"). The MVRA provides that the court is *required* to order restitution in the full amount of each victim's losses where a defendant is convicted of specified offenses "without consideration of the economic circumstances of the defendant." 18 U.S.C. § 3664(f)(1)(A). Included among those specified offenses are offenses against property under Title 18 "including any offense committed by fraud or deceit." § 3663A(c)(1)(A)(ii).

In Hughey v. United States, the Supreme Court held that in the absence of clear statutory authority to the contrary, restitution is limited to the count of conviction unless specifically agreed upon by both parties in the plea agreement. 495 U.S. 411, 412 (1990). Under the MVRA, however, when an offense " involves as an element a scheme, conspiracy, or pattern of criminal activity," a victim is defined as "any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern." § 3663A(a)(2). This language is "widely viewed as partially overruling Hughey's restrictive [view of restitution] and expanding district courts' authority to grant restitution." United States v. Henoud, 81 F.3d 484, 488 (4th Cir. 1996).[4]

Thus, the Fourth Circuit has held that the sentencing court may order restitution for losses resulting from a scheme "as long as the acts are the direct result of the defendant's criminal conduct

---

[4] While this conclusion was reached in a case regarding the Victim and Witness Protection Act ("VWPA"), precedent interpreting the VWPA is useful in interpreting the MVRA where, as here, the language of the two statutes is identical. See United States v. Lomas, 392 F. App'x 122, 128 (4th Cir. 2010) (an MVRA case viewing as controlling cases which interpreted identical language in the VWPA).

or are 'closely related to the scheme.'" United States v. Lomas, 392 F. App'x at 128 (citing United States v. Karam, 201 F.3d 320, 325-26 (4th Cir. 2000)). Conversely, restitution under the MVRA cannot include consequential damages. United States v. Wright, 176 F. App'x 373, 375 (4th Cir. 2006). The Fourth Circuit has held that "the mere fact that an injury is related to a crime is insufficient for restitution; there must be a direct and proximate connection between the two to support an award." In re Doe, 264 F. App'x 260, 263 (4th Cir. 2007).

There are certain statutory exceptions to that general rule. The victim under the MVRA shall be reimbursed for lost income and necessary child care, transportation, and other expenses incurred during participation in the investigation or prosecution of the qualifying felony offense or attendance at proceedings related to the offense. 18 U.S.C. § 3663A(b)(4)

While the court may not adjust the amount of restitution owed under the MVRA, the court is to set a payment schedule "in consideration of—(A) the financial resources and other assets of the defendant, including whether any of the assets are jointly controlled; (B) projected earnings and other income of the defendant; and (C) any financial obligations of the defendant; including obligations to dependents." 18 U.S.C. § 3664(f)(2).

1. Causation

At sentencing November 5, 2012, the government notified the court that it was seeking restitution for the trustee, who appeared and testified that the costs he incurred in the bankruptcy proceeding were a direct result of defendant's fraudulent scheme. The government asserts that a trustee ought to be viewed as a victim for the purposes of the MVRA, while defendant maintains that a trustee is not properly viewed as a victim of a scheme to defraud creditors. As noted, no Fourth Circuit law holds restitution is proper in this situation. Defendant also argues that restitution would

7

be inequitable in this matter.

Although the Fourth Circuit has not spoken on the subject, other circuits have held that a bankruptcy trustee may qualify as a victim under the MVRA. See e.g., United States v. Holthaus, 486 F.3d 451, 457-58 (8th Cir. 2007), cert. den., 552 U.S. 939 ("bankruptcy trustees qualify as victims under the [MVRA] if their compensation is negatively impacted by a debtor's misrepresentation"); United States v. Lowell, 256 F.3d 463, 465-66 (7th Cir. 2001)(same); United States v. Cluck, 143 F.3d 174, 180 (5th Cir. 1998) (in bankruptcy fraud victims may include both creditors and trustee); United States v. Shadduck, 112 F.3d 523, 531 (1st Cir 1997) ("[N]ot only creditors but the chapter 7 trustee as well may be victimized directly by a bankruptcy fraud to the extent it deprives the estate of assets otherwise subject to administration.").

In Lowell, the district court heard evidence about a "tremendous amount of unnecessary effort expended by the trustee as a result of [the defendant's] attempt to cover up his crime." 256 F.3d 463, 465. The crime at issue devolved around a false bankruptcy petition filed by that defendant on behalf of his computer company. The court distinguished the service of a private attorney as trustee, and referred to the trustee compensation structure, noting where it is based upon a percentage of the value of the assets liquidated and disbursed to creditors, "[i]t is obvious, therefore, that when Lowell fraudulently misstated the extent of CDM's assets in the admitted effort to conceal them from the trustee, he 'directly and proximately harmed' the trustee herself, as the fraud prevented her from easily identifying, seizing, liquidating, and dispersing the concealed assets." Id. at 465-66. The court continued, "[t]his, of course, reduced her compensation and increased her costs." Id. at 466.

Deeming the trustee a victim to the extent the fraud deprived the estate of assets otherwise

8

subject to administration, the court found in that case an order of restitution in the amount of $25,906.25 proper. This was based on a determination that the trustee spent 207.252 unnecessary hours in the case as a result of the defendant's fraudulent statements on the petition and schedules, and a finding that $125.00 an hour for this out-of-court time was appropriate compensation. Id.

In Holthaus, the court subscribed to the holding in Lowell, in a case involving the defendant's failure to report on his behalf various assets and liabilities at the start of that individual's bankruptcy case. 486 F.3d 451. In that case, the bankruptcy court also, as here, denied discharge. Defendant later was indicted for making a false declaration or statement under penalty of perjury in his petition, to which he pleaded guilty. He had concealed an inheritance and some gambling winnings, a tractor, a cabin, some accounts receivables, and a shotgun with collective value of around $55,000.00. Id. at 453. The trustee in Holthaus was found to have worked over 50 more hours than she would have largely to expose defendant's fraud. The bankruptcy court awarded the trustee a judgment in the amount of $7,855.22, which recognized compensation for trustee services in the case at the rate of $150.00 an hour. Id. at 458.[5]

This court agrees that a trustee properly may be viewed as a victim under the MVRA, as determined in the Fifth, Seventh, and Eighth Circuits. In this case, however, unlike those upon which the government relies, the trustee's discovery of the fraud came early and involved little substantive work. The existence and worth of the property readily was evidenced without regard to any fraud. While defendant falsely communicated under the persona of his friend with the trustee, including through transmittal of offers on which defendant forged the buyers' signatures, over a several week

---

[5] In its brief in Holthaus, the government explained that the bankruptcy judge in the underlying cases ordered a $7,855.22 judgment in favor of the Trustee who billed at the court-approved rate of $150 per hour. See Brief for Appellee at 5 United States v. Holthaus, 486 F.3d 451 (8th Cir. 2007) (No. 06-2843), 2006 WL 6275969.

9

period, there was resulting agreement by the trustee to a specific purchase price for the property which led to the bankruptcy court's approval of the sale. The tangled web spun by this defendant quickly was dissipated by the trustee in June 2009, as the real estate transaction headed towards closing, when the purchasers' attorney contacted the trustee to alert him about the side deal.

The $17,400.00 commission sum which the defendant had sought to conceal then swiftly was revealed. Legitimate purchasers presented by the defendant went forward with the sale. By the end of June 2009, the asset was transferred by the trustee on what appear to have been favorable terms.

The trustee testified that the subsequent affirmative action taken by his office against defendant, to show him not entitled to bankruptcy relief, followed as a part of defendant's fraud, which is undisputed. The trustee's work over a lengthy period comprising the bulk of the award in judgment rendered by the bankruptcy judge, on which the government relies in this proceeding, largely was undertaken to disprove the defendant's entitlement to discharge in bankruptcy. The trustee's work, however, was not the result of a scheme ongoing (except in the limited context of defendant's first deposition, it could be argued, where he was not apparently forthcoming as he was in the second one). The work undertaken by the trustee was, therefore, consequential to the fraud.

So this is not a case where the bulk of the fraud was perpetrated around a false bankruptcy petition which saw hours of extra work uncovering crime. This is a case involving work undertaken to show that the debtor should be penalized because of a shocking fraud quickly revealed. This later work was rewarded with a heightened rate of compensation endorsed by the bankruptcy court, upon the trustee's request, which the court finds is not indicative of loss under the MVRA. Extent of the harm suffered will be discussed more particularly below.

As to the issue of causation, the government in this proceeding also would seek to extend the

protections of the MVRA beyond its limits under the circumstances presented by urging restitution for expenses in litigation following events concluding in June 2009, as described. Cf. United States v. Havens, 424 F.3d 535, 538 (7th Cir. 2005) (where defendant was convicted of various offenses related to identity theft, costs associated with victim's civil litigation against the defendant did not qualify as losses under the MVRA).

Events between March and June 2009, involving wasted work efforts because of defendant's fraud, are a different matter. Over the defendant's objection, where a trustee can be a victim under the MVRA, the court in this part finds an award of restitution in favor of the trustee appropriate. The court turns now to the measure of damages.

2. Reasonable damages

The government urges that this court apply the bankruptcy court's judgment in deciding the extent of harm for purposes of the MVRA, as evidenced in that court's agreement to the trustee's request for a special rate of compensation. Having narrowed the focus to wasted work efforts which harmed the trustee that are more directly related to defendant's fraud, the court finds the hourly rates applied by the bankruptcy court for the later work inapplicable for several reasons.

As noted, a special rate of compensation was requested by the trustee and awarded by the bankruptcy court in assessing the work undertaken after discovery of the fraud. No specific findings as to how that special rate was determined were made, with deference to the trustee's June 15, 2010, statement which largely evidences work unrelated to the sales transaction in which the defendant fraudulently participated. The bankruptcy court relied upon the statement summarily, with reference to its detail and the number of work hours spent, to support a "higher 'special' rate." The bankruptcy court noted "the unprecedented extent of Coats' outrageous conduct," the "unique nature of the

case," and that "a more specialized effort was required to build the case."

The trustee's presentation to the bankruptcy court as noted included a statement of services in which he sought compensation for 13.20 hours of work at $415.00 an hour, and 26.80 hours of work at the rate of $395.00. Work of an associate was included totaling 56.40 hours valued at $265.00 an hour, and for 1.50 hours at $240.00. Request for payment for services of two paralegals also was included. As noted one was billed out for 18.90 hours at $175.00 an hour and 3.60 hours at $165.00 an hour, and another for .70 hours at $155.00.

These are extraordinarily high dollar values. The shock of the fraud and outrageousness of this defendant catapulted the measures, it seems, which are not appropriate under the MVRA to be used. The government referred in its brief to a regular hourly rate of $250.00 for the trustee yet it would seek to apply the $415.00 hourly rate even with respect to the trustee's time in travel and attendance at sentencing hearing.

For purposes of an order of restitution, the court limits the trustee to the regular rate of $250.00 an hour as the value measure of harm, reflective of the trustee's loss. The tenor of the cases relied upon by this court is that the measure of harm should be premised upon the regular rate allowed, also where trustees are in the business of sorting out fraud as a part of the work committed to be undertaken.

Relying on the $250.00 hourly rate, the court turns its attention now to hours expended. The court looks specifically to the wasted work incurred directly as a result of defendant's fraud, and not as a consequence of actions taken to object to his discharge or ensuing work activities. With reference to the statement provided by the trustee to the bankruptcy court, having assessed the same, and having considered the trustee's testimony at hearing, matters of record in the bankruptcy court,

12

and others of record before this court, including those facts adopted from the PSR, the court finds restitution premised on 12 hours of work appropriate, including the seven hours that the trustee spent in travel and attendance at the sentencing hearing, and five hours of wasted work on his part and that of his staff, incurred as a direct result of defendant's fraud, including time in negotiations involving the commission and related activities, review of fraudulently prepared documentation, and preparation of an application concerning payment of the commission, for a total of $3,000.00.

3.  Payment schedule

While due immediately, in this instance the court must set a payment schedule for restitution, keying the payment schedule to the factors set forth in 18 U.S.C. § 3664(f)(2), demonstrating the feasibility of the schedule. United States v. Leftwich, 628 F.3d 665, 668 (4th Cir. 2010). Defendant's financial resources are limited, and his obligations are large. As was noted above, a negative net worth of $91,815.25 was presented, with a monthly income of $1,200.00 projected based on current employment. Due to living arrangements he enjoyed prior to sentencing, defendant benefitted from a positive cash flow of approximately $700.00 per month, depending upon a parent to provide virtually all of his basic living expenses.

Defendant shall pay the sum ordered through the inmate financial responsibility program and any amounts owing, based on defendant's financial resources, projected earnings, and financial obligations, shall be paid at a rate of $75.00 per month to begin 60 days after he has completed his sentence of imprisonment. If a different payment schedule is shown then as appropriate, the probation officer will make recommendation to this court for a payment schedule change.

## CONCLUSION

For the reasons stated above, the government's motion for restitution is GRANTED IN

PART. Restitution in the amount of $3,000.00 is ordered to be paid by this defendant. The Judgment shall be conformed to include this award to the trustee.

SO ORDERED, this the 8th day of March, 2013.

　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　LOUISE W. FLANAGAN
　　　　　　　　　　　　　　United States District Judge